```
            UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF LOUISIANA

COEX COFFEE INTERNATIONAL AND              CIVIL ACTION
INSURANCE COMPANY OF NORTH AMERICA
                                           NO. 06-4798
VERSUS
                                           SECTION B(2)
DUPUY STORAGE & FORWARDING, LLC
```

### ORDER AND REASONS

Before the Court is Defendant Dupuy Storage and Forwarding Company LLC's Motion for Summary Judgment. (Rec. Doc. No. 19). After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED.**

### *BACKGROUND*

Defendant Dupuy Storage and Forwarding Company, LLC ["Dupuy"] operated several storage facilities in the New Orleans area. Prior to Hurricane Katrina, Plaintiff Coex Coffee International Inc. ["Coex"] stored coffee at Dupuy's Warehouse No. 1 located at 4300 Jourdan Road and Warehouse No. 18 located at 5300 Old Gentilly Road. During Hurricane Katrina, Warehouse No. 1 sustained approximately 1 ½ to 2 feet of flooding while Warehouse No. 18 sustained approximately 4 feet of flooding. Plaintiff alleges that the flood waters accumulated beneath palletized bags of coffee

1

located in both warehouses.  As a result, a number of the bags of coffee were exposed for long periods of time to moisture migration and mold.  Additionally, some of the bags actually fell over and were submerged in the flood waters.  In all, Plaintiff alleges that as a result of damage from flooding, 1,495 bags of its coffee had to be destroyed, while 4,319 bags were sold for salvage at greatly reduced prices.

Plaintiff brought suit against Defendant alleging negligence and breach of contract on Defendant's part as a result of the damaged coffee.  Defendant has now filed this Motion for Summary Judgment seeking to dismiss Plaintiff's claims.

Defendant claims that the evidence submitted, which includes a hurricane preparation plan in place at the Dupuy warehouses, as well as the affidavit of Dupuy's vice president, which states that the warehouses were properly maintained before the storm and that the plan was carried out, establishes that Defendant acted reasonably under the circumstances and that it is, therefore, entitled to summary judgment.

Plaintiff claims that Defendant has not met its burden of proving that it exercised reasonable care. Specifically, Plaintiff argues that Defendant has not presented sufficient evidence to support its contention that it could not have moved the coffee to a safer location to prevent damage. Additionally, Plaintiff argues that Defendant's affidavit statements that it carried out the

hurricane plan are not specific enough and that Defendant has failed to explain what precautions were actually taken before and after the storm.

## DISCUSSION

**A.   Summary Judgment Standard**

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327, (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

**B.    Plaintiff's Claim for Damages**

La. Rev. Stat. Ann. § 10:7-204 sets out the standard of care for a warehouseman. It provides the following:

> A warehouseman is liable for damages for loss of or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful person would exercise under like circumstances, but unless otherwise agreed he is not liable for damages which could not have been avoided by the exercise of such care.

La. Rev. Stat. Ann. § 10:7-204. Thus, a warehouseman is held to the standard of reasonableness under the circumstances unless the parties agree otherwise. Under Louisiana law, once the Plaintiff establishes that a contract existed and that the goods were returned in worse condition than delivered, a presumption arises that the warehouseman has breached the standard of care. *Orange Rice Milling Co. v. Hope Rice Mill*, 189 So. 2d 64, 70 (La. App. 3 Cir. 1966); *Canale v. Gus Mayer Co.*, 481 So. 2d 170, 171 (La. App. 4 Cir. 1985). Once the plaintiff has made out a prima facie case, the burden shifts to the warehouseman to offer evidence of due care. *Cook & Co. v. Gulf Shipside Storage Corp.*, 177 F. Supp. 869, 870-71 (E.D. La. 1959).

In the present case, the parties do not dispute that a contract existed concerning the storage of the coffee. Neither party, however, in connection with this motion, has submitted a copy of the contract. Thus, in the absence of any of the contractual terms or argument by the parties concerning those

4

terms, the Court will assume that the parties did not modify the reasonableness standard set forth in La. Rev. Stat. Ann. § 10:7-204.  Additionally, the parties do not dispute the fact that Plaintiff delivered the coffee to the Defendant in good condition.  Thus, the issue in this case is limited to whether Defendant exercised reasonable care under the circumstances.

   Defendant has offered the following evidence in support of its Motion for Summary Judgment.  First, Defendant has submitted a copy of Plaintiff's answers to Defendant's interrogatories in which Plaintiff states that it is not aware of any warehouse standard that Defendant violated but that it believes that Defendant should have had a hurricane preparedness plan in place, that it should have properly maintained the warehouses, and that it either should have stored the coffee in a more secure area that did not flood or moved it to such an area after the storm.  In addition to Plaintiff's answers, Defendant has submitted a document entitled "Hurricane Operating Manual" which outlines the procedure for handling a hurricane at the Dupuy warehouses.  The Manual states that the operations manager, warehouse manager, and special project manager are all to act as Hurricane Coordinators.  The section of the Manual entitled "Pre-Hurricane Long-term action" includes maintenance requirements for the warehouses and the instruction that the Hurricane Coordinators formulate an emergency plan.  The next section entitled "Pre-Hurricane Short-term action" includes a

list of tasks, some or all of which are to be accomplished shortly before a hurricane, depending on the severity of the hurricane. These tasks include moving the coffee into safe locations, boarding up the windows, and placing sandbags at the doorsills.  The next section is entitled "post-Hurricane Short-term action" and includes the instruction that the Hurricane Coordinators and hurricane response team evaluate all the damage and perform necessary repairs.  Finally, the "Post-Hurricane Long-term action" section includes a directive to review the damage caused by the hurricane and adjust the hurricane guidelines for future storms. Attached to this Manual is an appendix section which includes one checklist for long-term maintenance and another for emergency materials and equipment.  According to this section, maintenance to the roof coverings, gutters, and drains of the warehouses was performed in May and June of 2005, several months before Hurricane Katrina struck.  Defendant has also submitted an affidavit of Kevin Colley, the vice-president of Dupuy.  In it, Colley states that Defendant had in force at the time Hurricane Katrina struck the hurricane preparation plan described above and that in the advance of Hurricane Katrina, all elements of the plan were enacted. Additionally, he states that the roof systems at the warehouses were in proper condition at the time the Hurricane struck. Warehouses 1 and 18 were regularly inspected by the USDA and the New York Coffee Exchange, and both warehouses passed all

inspections. Finally, the affidavit states that over 200,000 bags of coffee were stored in Warehouses 1 and 18 and that it would have taken well over a month to remove the bags. Defendant claims that, taken together, this evidence establishes that Defendant acted reasonably under the circumstances and that it is, therefore, entitled to summary judgment.

In response, Plaintiff claims that Defendant has not met its burden of proving that it exercised reasonable care. Specifically, Plaintiff argues that Defendant has not presented sufficient evidence to support its contention that it could not have moved the coffee to a safer location. Plaintiff has attached the floor plans for Warehouse No. 18 which show that the warehouse had a second floor. Plaintiff argues that Defendant could have stored the coffee on this level or moved it there after the storm and that either precaution would have led to less damage. Additionally, Plaintiff claims that the affidavit statements that Defendant carried out the hurricane plan are not specific enough and that Defendant has failed to explain what precautions were actually taken.

Neither party cites nor is the Court aware of caselaw involving a claim against a warehouse under Louisiana law as a result of damage caused by Hurricane Katrina. The Court notes, however, that the Louisiana law of deposit, upon which the duty of care of a warehouseman is based, is similar to the common law of

bailment. *Coe Oil Serv., Inc. v. J.D. Hair*, 283 So. 2d 734, 736 n. 1 (La. 1973). In *HRD Corp. v. Lux Int'l Corp.*, 2007 WL 2050366 (S.D. Tex. 2007) the court addressed a bailment claim in the context of Hurricane Katrina under Texas law. Like the Louisiana law governing the standard of care for a warehouseman, The Texas law of bailment also contains a presumption of negligence on the warehouseman's part once the goods have been delivered in good condition. *Lux*, 2007 WL at *11. In *Lux*, the Plaintiff stored thousands of pounds of polyethylene wax at the Defendant's plant which was located on the Gulf Coast. *Id*. at *2. The wax was destroyed by storm surge form Hurricane Katrina, and the Plaintiff claimed that the warehouse was liable for the damage under a number of theories including bailment. *Id*. at *11. Similar to the present case, the defendant submitted an affidavit from the manager of the facility in which he stated that the defendant carried out its hurricane plan which included securing the building and the contents. *Id*. at *3-4. Additionally, he stated that there was no way to move the wax to higher ground given the time constraints in the wake of the hurricane. *Id*. Finally, the defendant argued that Hurricane Katrina was an "Act of God" and that no amount of reasonable care could have saved the wax under the circumstances. *Id*. at *11. The Court found in *Lux* that the affidavit evidence sufficiently rebutted the presumption of negligence on the defendant warehouse's part. *Id*. The defendant acted reasonably

under the circumstances in protecting the equipment, structures, and inventory at the plant. *Id*. Specifically, the fact that the defendant did not move the wax was not unreasonable given that the storm path became clear only several days before it made landfall. *Id*.

The evidence submitted in the present case is similar to that submitted in *Lux*. Defendant has submitted evidence that the warehouses in question were properly maintained before the storm. Additionally, the hurricane preparation plan together with the Colley affidavit outline the precautions Defendant took in the months before the storm as well as in the days leading up to it to reduce damage. Given the severity of the circumstances, the Court finds that Defendant has rebutted the presumption of negligence on its part and has established that it acted reasonably. In turn, Plaintiff has not submitted sufficient evidence to support the contention that a genuine issue of fact exists. Plaintiff has simply proposed several hypotheticals concerning where the coffee could have been stored before the hurricane or moved after the flooding. Other than the floor plans, however, Plaintiff has not submitted any evidence such as documentation of past flooding of these warehouses, industry standards with regard to coffee storage which might have required the application of different storage methods, or past failed inspections which would indicate unreasonable conduct on Defendant's part. In the absence of any

evidence submitted by the Plaintiff, the Court finds that the Defendant acted reasonably.  Given the quantity of coffee stored in the warehouses as well as the time constraints before the storm and the limited access to the city after the storm, the Court finds, as in *Lux*, that the exercise of reasonable care did not require Defendant to take further measures to protect the stored coffee.

In sum, the Court finds that Defendant has sufficiently rebutted the presumption of negligence and that there exist no issues of material fact as to whether Defendant exercised reasonable conduct.

Accordingly,

**IT IS ORDERED** that Defendant's Motion For Summary Judgment is **GRANTED**.

New Orleans, Louisiana this 23rd day of April, 2008.

_____
UNITED STATES DISTRICT JUDGE